# Third District Court of Appeal

## State of Florida

Opinion filed July 6, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-2138
Lower Tribunal No. 19-6287 CC
_____

**Joshua Citron,**
Appellant,

vs.

**H.G.C. Auto Collision, Inc.,**
Appellee.

An appeal from the County Court for Miami-Dade County, Linda Melendez, Judge.

Joey Gonzalez, Attorney, P.A., and Joey D. Gonzalez, for appellant.

Law Office of Richard Lorenzo, P.A., and Richard Lorenzo, for appellee.

Before MILLER, GORDO, and LOBREE, JJ.

MILLER, J.

Appellant, Joshua Citron, challenges a final judgment awarding his 2015 Chrysler 300 to appellee, HGC Auto Collision, Inc., to satisfy certain fees purportedly incurred after his vehicle was towed to the repair shop following an accident. On appeal, Citron contends the trial court erred in failing to conduct a mandatory lien hearing pursuant to section 713.585(5), Florida Statutes (2019). For the reasons that follow, we reverse.

## BACKGROUND

The facts relevant to this appeal are largely undisputed. In late 2018, Citron was involved in an automobile accident. His 2015 Chrysler 300 was towed to HGC for repairs, and, after notifying his insurer, Citron obtained an insurance claim number. HGC furnished Citron with a standard written motor vehicle repair estimate and disclosure statement, pursuant to section 559.905, Florida Statutes (2018). The document reflected the claim number and contained two separate provisions bearing on the accrual of costs unrelated to repairs. The first stated that cancellation of the repair order would result in teardown and reassemble costs billed at a rate of $42 per hour, and the second provided that the failure to retrieve the vehicle within three working days after notification of repair completion would result in

storage fees of $100 per day.[1]  The agreement was silent as to the accrual of storage fees in the event of repair cancellation, and HGC left prepared fields designated for "Estimate/Diagnosis" fees and "Proposed Completion Date" blank.

For the next six weeks, HGC unsuccessfully sought to ascertain the status of the insurance claim.  On January 28, 2019, Citron informed HGC that his insurer had rejected his claim.  He attempted to retrieve his vehicle but was allegedly met with a demand for approximately $5,000 in storage and administrative fees.  Citron refused to pay, and, in exchange for waiving the demanded fees, HGC offered to (1) suspend further storage fees for the next forty-eight hours to allow Citron to enter into a contract to self-pay repairs in the amount reflected in a yet to be prepared estimate or (2) reduce the fees owed to $2,341.05, comprised of $1,740 in storage fees, $175 in administrative fees, $100 for preparing an estimate, $141.05 in taxes, and $185 in towing fees.  Citron received the estimate and rejected both offers.

HGC refused to release the vehicle and forwarded Citron a claim of lien and notice of sale dated February 15, 2019.  The claim stated that Citron

---

[1] The document specifically stated: "If I cancel repairs to my vehicle for any reason, I understand that teardown and reassemble fee of $42 @ hr will apply.  I understand that a charge of $100 per day will be charged if I fail to pick up my vehicle within (3) working days of notification of completion."

3

could reclaim the vehicle if he paid $2,235, comprised of $900 in storage fees, continuing to accrue at $100 per day, $360 in towing and administrative fees combined, $100 in repair fees, and $875 in lien fees. According to the notice, failure to pay the amount owed would result in the sale of the vehicle at a public auction on March 8, 2019.

Two days prior to the slated auction, Citron filed suit in the county court. In his complaint, he sought to invalidate the claim of lien and notice of sale as noncompliant with the relevant statutory scheme. His complaint further demanded an emergency hearing to determine, among other grounds, the validity of the lien and the reasonableness of the charges, as authorized under section 713.585, Florida Statutes. He also filed a separate motion seeking the same relief.

The trial court denied the requests for a hearing and instead referred the parties to mediation. After an impasse in negotiations, Citron pursued a default. HGC eventually filed a counterclaim, seeking payment of storage fees and enforcement of the lien through a public sale. The counterclaim alleged, "Since HGC is not in the business (or charity) of storing vehicles for free, HGC, pursuant to Florida statute and industry standard, placed a lien on the vehicle." HGC did not claim to have performed any repairs.

4

Over two years after suit was filed, the trial court convened a non-jury trial. At the conclusion of the trial, the court initially entered judgment in favor of HGC in the amount of $31,365, consisting of $100 in repair costs, $360 in towing and administrative fees, $875 in lien fees, and $30,030 in storage fees. Citron sought reconsideration, alleging that the award of damages exceeded the then-applicable jurisdictional limits of the county court.

The trial court entered an amended judgment reducing the damages to $15,000. For reasons not evident on the record before us, the trial court then entered a second amended judgment directly awarding Citron's vehicle to HGC "as the Court's full award of damages to the Defendant." The instant appeal ensued.

## STANDARD OF REVIEW

We interpret the relevant statutory provisions de novo and review the lower court's factual findings for competent, substantial evidence. See Swiss v. Flanagan, 329 So. 3d 199, 202 (Fla. 3d DCA 2021).

## LEGAL ANALYSIS

Resolution of this appeal rests on two separate yet convergent statutory provisions. The first, the Florida Motor Vehicle Repair Act (the "Act"), codified in section 559.901 et seq., Florida Statutes, was enacted on January 1, 1981. The second, chapter 713, Florida Statutes, authorizes liens

5

"[i]n favor of persons performing labor or services for any other person, upon the personal property of the latter upon which the labor or services is performed." § 713.58(1), Fla. Stat. Although certain provisions of chapter 713 have since been amended, this particular dispute is governed by the versions that existed at the time of the filing of the complaint in 2019.

The Act was established "to protect consumers against misunderstandings arising from oral estimates of motor vehicle repairs and the legal disputes and litigation that result from the 'fait accompli' nature of claims for repair work already done." Osteen v. Morris, 481 So. 2d 1287, 1290 (Fla. 5th DCA 1986). In furtherance of this purpose, the Act prohibits "any motor vehicle repair shop" from making or charging "for repairs which have not been expressly or impliedly authorized by the customer." § 559.920(2), Fla. Stat. A shop or employee violates the Act when there is a misrepresentation "that repairs have been made to a motor vehicle." § 559.920(3), Fla. Stat. In this vein, the Act further prohibits a shop from failing "to return any customer's motor vehicle because the customer has refused to pay for unauthorized repairs or because the customer has refused to pay for repair charges in excess of the final estimate." § 559.909(4), Fla. Stat.

"No motor vehicle repair shop may refuse to return a customer's motor vehicle by virtue of any miscellaneous lien, nor may it enforce such a lien in

6

any other fashion if it has failed to substantially comply with the provisions of [the Act]." § 559.919, Fla. Stat. A repair shop, however, may exercise its prerogative to enforce a valid lien in accordance with the Florida Statutes. In this regard, "[a] vehicle subject to lien enforcement . . . must be sold by the lienor at public sale." § 713.585(8), Fla. Stat.

The lien statutes are intended to facilitate an early determination of the rights of the respective parties. Section 713.585(5), Florida Statutes, provides:

> At any time before the proposed or scheduled date of sale of a vehicle, the owner of the vehicle, or any person claiming an interest in the vehicle or a lien thereon, may post a bond following the procedures outlined in s[ection] 559.917 or file a demand for hearing with the clerk of the circuit court in the county in which the vehicle is held to determine whether the vehicle has been wrongfully taken or withheld from her or him.

Upon such a demand, "a hearing shall be held before the proposed or scheduled date of sale of the vehicle." § 713.585(5)(a), Fla. Stat. At the hearing, the trial court must issue findings, including whether the lien is valid and storage charges are reasonable. See § 713.585(7), Fla. Stat.

In the instant case, Citron filed suit alleging that, because he was not notified of the completion of repairs, HGC prematurely demanded the payment of storage fees and scheduled a public sale. He requested an emergency statutory hearing, via not one submission but two, to no avail.

7

HGC argues, however, that the non-jury trial was an antidote for any associated error. We are not so persuaded.

We begin our analysis with the observation that the statutory language demonstrates the lien hearing provision is mandatory. See § 713.585(5)(a), Fla. Stat. (emphasis added) ("Upon the filing of a demand for hearing, a hearing *shall* be held before the proposed or scheduled date of sale of the vehicle."); § 713.585(7), Fla. Stat. (emphasis added) ("At a hearing on a complaint relating to the requirements of this section, the court *shall* issue an order determining: (a) [w]hether the vehicle is subject to a valid lien . . . and (f) [t]he reasonableness of storages charges."); see also Fla. Caucus of Black State Legislators, Inc. v. Crosby, 877 So. 2d 861, 863 (Fla. 1st DCA 2004) (observing "shall" is obligatory, rather than discretionary). Consequently, to dispense with the requirement would thwart the intent of the Legislature. See Imhotep-Nguzo Saba Charter Sch. v. Dep't of Educ., 947 So. 2d 1279, 1282 (Fla. 4th DCA 2007) ("[I]t is the legislature's job to say what the law is . . . ."); Art. II, § 3, Fla. Const.

Further, by the time Citron proceeded to trial, HGC's storage fees claim had ripened fifteen-fold, an amount surpassing the value of the vehicle. This is the very scenario the statute strives to avoid. An early determination as to

8

the rights and remedies of the parties guards against the accrual of unnecessary damages.

Finally, putting aside the fact that awarding the vehicle directly to the lienor instead of requiring a public auction runs afoul of the lien statutes, the final judgment fails to address the reasonableness of the charges and whether the initial demand for payment was proper and, if not, whether the demand or other procedural deficiencies tainted the ensuing claim of lien and notice of sale. See § 713.585(8), Fla. Stat. ("A vehicle subject to lien enforcement . . . must be sold by the lienor at public sale."); see also § 713.585(1), Fla. Stat. ("The lienor must give notice . . . within 7 business days, excluding Saturday and Sunday, from the beginning date of the assessment of storage charges on said motor vehicle . . . ."); § 713.585(1)(f), Fla. Stat. ("A vehicle may not be sold earlier than 60 days after completion of the repair work.").

Accordingly, we reverse and remand the final judgment under review. Upon remand, the trial court shall conduct a hearing and issue the statutorily required findings, assessing each from the time the demand for hearing was originally made so as to negate any prejudice to Citron. See § 713.585(7), Fla. Stat.

Reversed and remanded.